UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CURTIS J. GREGORY, SR.,

    *Plaintiff*,

v.

KILOLO KIJAKAZI,

    *Defendant*.

No. 21-cv-2115 (DLF)

## MEMORANDUM OPINION

In this action, plaintiff Curtis J. Gregory, Sr. challenges the Social Security Administration's (SSA's) denial of his claims for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. Before the Court are Gregory's Motion for Judgment of Reversal, Dkt. 15, and the Social Security Commissioner's Motion for Judgment of Affirmance, Dkt. 16. For the reasons that follow, the Court will deny the Motion for Judgment of Reversal and grant the Motion for Judgment of Affirmance.

### I.   BACKGROUND

#### A.  Statutory and Regulatory Background

"To qualify for disability insurance benefits and supplemental security income under Titles II and XVI of the [Social Security] Act, [a claimant] must establish that []he is 'disabled.'" *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). The Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a). The impairment must be severe and must render the individual unable to

perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B); *accord* 20 C.F.R. § 416.905(a).

The Commissioner uses a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden at the first four steps. *Butler*, 353 F.3d at 997. First, the claimant must show that he is not presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, he must demonstrate that he has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* § 416.920(a)(4)(ii), (c). Third, the claimant must show that his impairments or combination of impairments "meets or equals" one of the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. See *Id.* § 416.920(a)(4)(iii). If they do, then the claimant is deemed disabled, and the inquiry ends. *Id.* If not, the ALJ must proceed to the fourth step, which requires the ALJ to determine the claimant's residual functional capacity and consider whether, in light of that capacity, the claimant can still perform work that he has done within the past 15 years (if the claimant has indeed done such work). *See Id.* §§ 416.920(a)(4)(iv), 416.960(b)(1). Fifth, if the claimant's capacity indicates that he cannot engage in past work, then the burden shifts to the Commissioner to prove that the claimant's capacity, age, education, and past work experience indicate that he is able to perform "other work" that exists in the national economy. *Id.* § 416.920(a)(4)(v); *Butler*, 353 F.3d at 997.

### B. Factual Background

On September 27, 2019, Gregory filed an application for disability insurance benefits and supplemental security income with the Social Security Administration, alleging that since August 23, 2019, he has been disabled and unable to work. A.R. 24, Dkt. 12. Starting in 1992, Gregory has been employed as an electrician and as a night cleaner. *Id.* at 35, 290. He stopped working in

2019. *Id.* at 27. Gregory has a high school education, and as of the date of his application, he was 51 years old. *Id.* at 35.

### C. Procedural History

On January 9, 2020, and again on April 15, 2020, upon reconsideration, the SSA denied Gregory's claim for benefits. *Id* at 24. Gregory then requested a hearing before an Administrative Law Judge (ALJ) in Washington, D.C., *id.*, and on December 21, 2020, after holding a hearing, the ALJ again denied Gregory's application, *id.* at 37. At step one of the disability evaluation process, the ALJ determined that Johnson had not engaged in substantial gainful employment since August 23, 2019. *Id.* at 26. At step two, he found Gregory had the following severe impairments: "osteoarthritis of the left knee, degenerative joint disease of the left shoulder, affective disorder, anxiety disorder, and substance abuse disorder." *Id.* at 27.

At step three, the ALJ concluded that Gregory does not have a qualifying "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ explained that Gregory's physical impairments did not meet the requirements for major dysfunction of a joint under Listings 1.02A or 1.02B. *Id.* He noted that while medical evidence indicated "mild restriction of range of motion, occasional mild weakness, and reports of tenderness" in Gregory's left knee, "these findings do not establish an inability to ambulate effectively as defined in [Listing] 1.02A." *Id.* As to Listing 1.02B, he acknowledged that while the tear in Gregory's left shoulder caused "mild range of motion impairment, mildly limited motor strength, positive impingement testing," and pain, these symptoms did not "establish an inability to perform fine and gross movements effectively, as defined in [Listing] 1.00B2(c)." *Id.* The ALJ found that Gregory's mental impairments "singly

3

and in combination[] [did] not meet[] or medically equal the criteria of listings 12.04 and 12.06." *Id.* at 28. The ALJ determined that Gregory did not satisfy the "paragraph B" criteria because despite several mild or moderate limitations, Gregory did not have "one extreme limitation or two marked limitations." *Id.* at 28–29. The ALJ also concluded that Gregory did not satisfy the "paragraph C" criteria because Gregory has more than a "minimal capacity to adjust to changes in his environment." *Id.* at 29. The ALJ considered Gregory's testimony that he "leave[s] his house independently, interact[s] with others in his community, shop[s], and even teach[es] his nephews how to perform basic electrician tasks." *Id.*

At step four, as to Gregory's physical symptoms, the ALJ found that Gregory's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Gregory was not completely limited in his physical ability to work. *Id*. at 32. The ALJ considered Gregory's testimony, radiologist reports, imaging studies, and physical examinations and concluded that Gregory had the "residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [he] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently"; "can sit for 6 hours in an 8-hour workday, and stand and walk for 6 hours in an 8-hour workday"; "can only frequently push, pull, and reach with the left arm"; "can only frequently push, pull, and operate foot controls with the left lower extremity"; "can only frequently: climb ramps and stairs; balance; stoop; kneel; crouch; and crawl"; and "can occasionally climb ropes, ladders, or scaffolds." *Id.* at 30. As for Gregory's mental health, the ALJ determined that Gregory is "limited to simple, routine tasks but not at a production pace"; "can only occasionally interact with supervisors and the public"; "is limited to applying commonsense understanding to carry out uninvolved written or oral instructions"; "is limited to

4

dealing with problems involving few concrete variables in or from standardized situations"; and "must be afforded normal work breaks." *Id.*

At step five, after consulting an independent vocational expert, the ALJ determined that Gregory could perform his past work as a night cleaner, as well as other jobs in the national economy, including as a housekeeping cleaner, marker, and stuffer. *Id.* at 35–36. Those occupations all required "GED reasoning level 2 or below" and had between 45,000 and 365,000 positions available nationally. *Id.*

The Appeals Council denied Gregory's request for a review on June 25, 2021. *Id.* at 1. On August 5, Gregory filed his complaint, Dkt. 1, in this Court for review of his denial of benefits. Now before the Court are Gregory's Motion for Judgment of Reversal and the Commissioner's Motion for Judgment of Affirmance.

## II.   LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of Health, Educ. & Welfare*, 627 F.2d 278, 281 (D.C. Cir. 1980)). Once an ALJ issues a decision, the claimant may seek review by the Administration's Appeals Council. 20 C.F.R. § 416.1467. If the Council denies review, the ALJ's decision becomes the final decision of the Administration's Commissioner. *See id.* § 416.1481.

The Social Security Act gives federal district courts review over the Commissioner's final decisions. 42 U.S.C. §§ 405(g), 1383(c)(3). A reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, *see id.* § 405(g), and if it correctly applied the relevant legal standards, *Butler*, 353 F.3d at 999. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson*

5

*v. Perales*, 402 U.S. 389, 401 (1971)).  This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (internal quotation marks omitted).  "Substantial-evidence review is highly deferential to the agency fact-finder."  *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).  On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied."  *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).  Further, the reviewing court may not replace the ALJ's judgment "concerning the credibility of the evidence with its own."  *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (internal quotation marks omitted).  Rather, "[t]he credibility determination is solely within the realm of the ALJ."  *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012).

Finally, the Social Security Administration guides its ALJs to provide a "narrative discussion" connecting the medical evidence to the ALJ's conclusions about the claimant's capacity.  *See* Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (July 2, 1996), *available at* 1996 WL 374184, at *7.

### III.   ANALYSIS

#### A.   Listing 1.02

Gregory first challenges the ALJ's determination that his knee and shoulder impairments did not meet the requirements of Listing 1.02.  *See* Mot. for J. of Reversal at 14–18.  As of the time of the ALJ's decision, Listing 1.02 required either (A) a "hip, knee, or ankle" injury that resulted in an "inability to ambulate effectively," or (B) a "shoulder, elbow, or wrist-hand" injury

that resulted in an "inability to perform fine and gross movements effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (2020).[1] As to both his knee and shoulder injuries, Gregory argues that the case should be remanded because the ALJ neglected to consider certain evidence supporting the existence of a Listing 1.02 impairment. *See* Mot. for J. of Reversal at 14–15 (citing *Turner v. Astrue*, 710 F. Supp. 2d 95, 105 (D.D.C. 2010)).

The Court disagrees. A "reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own. Rather, the reviewing court must determine whether the ALJ has analyzed all evidence and has sufficiently explained that weight he or she has given to obviously probative exhibits." *Goodman*, 233 F. Supp. 3d at 104 (cleaned up). As to Paragraph A of Listing 1.02, Gregory contends the ALJ ignored evidence of his arthritis, his limited range of motion, and his functional limitations, as well as testimony that Gregory requires a cane and information in Gregory's treatment notes. But the ALJ explicitly considered Gregory's "mild meniscal tearing and degenerative changes of the left knee[,] . . . mild restriction of range of motion, occasional mild weakness, and reports of tenderness upon palpation," along with Gregory's "testimony alleging the occasional use of a cane." A.R. 27. The ALJ did not "ignore[] this evidence without discussion," Mot. for J. of Reversal at 16 (citing *Turner*, 710 F. Supp. 2d at 105); he concluded that, notwithstanding these limitations, nothing in the record showed lack of function amounting to "an inability to ambulate effectively." A.R. 27 (citing Listings 1.02A, 1.00B2b). That determination was supported by substantial evidence, including evidence of Gregory's normal gait and a review of Gregory's physical examinations. *Id.*; *see, e.g.*, *id.* at 426, 442 (normal gait); *id.* at 398, 402 (imaging results);

---

[1] Listing 1.02 has since been supplanted by more recent rules, *see* 85 Fed. Reg. 78164 (Dec. 3, 2020), but Gregory agrees that the then-current version governs his challenge in this Court, *see* Mot. for J. of Reversal at 15 n.5.

*id.* at 409 (examination summary); *id.* at 416 (discussion of x-ray). As to Paragraph B, Gregory asserts that the ALJ failed to consider evidence regarding the severity of his left shoulder injury, namely evidence of impingement syndrome, limited range of motion, and reports of pain. To the contrary, the ALJ explicitly considered "mild range of motion impairment, mildly limited motor strength, positive impingement testing, and reports of pain," before concluding this did not establish "an inability to perform fine and gross movements effectively." A.R. 27. The ALJ's reasoning, along with his citations to specific exhibits in the record, constitutes sufficient explanation and does not "le[ave] [the Court] guessing as to how the ALJ evaluated probative material." *Turner*, 710 F. Supp. 2d at 105. Nor could no reasonable adjudicator reach the ALJ's conclusion based on the evidence he incorporated into his decision, including physical examinations and Gregory's own testimony of daily activities and capacity to perform light lifting. *See* A.R. 27; *Butler*, 353 F.3d at 999; *see, e.g.*, A.R. 402 (imaging results); *id.* at 417 (physical examination showing ability to lift and carry 25 pounds frequently); *id.* at 73 (testimony about helping with grocery shopping).

### B. Listings 12.04 and 12.06

Gregory next argues that the ALJ applied the incorrect criteria to evaluate whether his mental impairments met or equaled the requirements of Listings 12.04 and 12.06. *See* Mot. for J. of Reversal at 18–20. To fall within the coverage of those listings, a claimant must meet either "paragraph B" or "paragraph C" criteria. 20 C.F.R. pt. 404, subpt. P, pp. 1, §§ 12.04(B)–(C), 12.06(B)–(C). The ALJ determined that Gregory satisfied neither, and Gregory now contends that the ALJ erred in assessing the criteria for paragraph C.[2]

---

[2] Gregory does not challenge the ALJ's determination with respect to paragraph B.

Both of Gregory's arguments on this point are meritless. First, Gregory faults the ALJ for failing to "explain his reasoning for how . . . the capacity to interact with others [was] relevant to whether . . . Gregory's mental impairments are serious and persistent." Mot. for J. of Reversal at 19–20. But the ALJ specifically explained that this evidence—Gregory's "capacity to leave his house independently, interact with others in his community, shop, and even teach his nephews how to perform basic electrician tasks"—showed that Gregory's condition, despite "affect[ing] his functioning," did not severely change his capacity to engage independently in various life tasks. A.R. 29. Thus, the ALJ concluded, with substantial evidence, that Gregory had more than a "minimal capacity to adapt to changes in his environment or to demands not already part of his daily life," *id.*, and so did not meet Paragraph C's prerequisite to finding a condition to be severe and persistent. 20 C.F.R. pt. 404, subpt. P, app.1, §§ 12.04(C)(2), 12.06(C)(2); *see also id.* § 12.00(G)(2)(C) ("We will consider that you have achieved only marginal adjustment when . . . for example, you have become unable to function outside of your home . . . without substantial psychosocial supports."). Second, Gregory says that the ALJ "did not consider whether Mr. Gregory had a documented history of his mental conditions over a period of at least two years." Mot. for J. of Reversal at 20. But the ALJ repeatedly recognized Gregory's mental health treatment throughout his decision, including when evaluating Paragraph C. *See, e.g.*, A.R. 28–30 (referencing Gregory's "mental health records"), and since marginal adjustment is a requirement to obtain relief under paragraph C, the ALJ had completed determining that Gregory was ineligible upon determining that he did not have only marginal adjustment.[3]

---

[3] Gregory also suggests that the ALJ did not discuss his medical records showing his mental health-related symptoms. But the ALJ had just discussed those records in evaluating the paragraph B criteria, A.R. 28, and he determined that although the records suggested an effect on Gregory's functioning, they did not, in combination with the evidence of Gregory's regular daily activities, show marginal adjustment, *id.* at 29.

## C. Residual Functional Capacity

Gregory also objects to the ALJ's evaluation of his residual functional capacity (RFC). Mot. for J. of Reversal at 21–27. An ALJ need only provide a logical connection between the evidence and his conclusion, *see Thomas v. Astrue*, 677 F. Supp. 2d 300, 306 (D.D.C. 2010), not an articulation of each function and its implication on the ALJ's overall conclusion of the claimant's residual capacity, *see Kim M. v. Kijakazi*, No. 20-cv-2072-GMH, 2021 WL 4033060, at *7 (D.D.C. Sep. 3, 2021). A narrative discussion is sufficient explanation. *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017). An ALJ's conclusion is sufficient so long as it is supported by substantial evidence in the record. *See Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993). The ALJ must "consider[ ] the record as a whole and discuss[ ] which evidence he found credible and why." *Goodman*, 233 F. Supp. 3d at 112.

Here, first, Gregory argues that the ALJ incorrectly weighed the record evidence of his physical limitations. In particular, he contends that the ALJ improperly discounted the opinion of Gregory's "long-time care provider" Ikechukwu Nwosu, N.P., because it identified no clinical findings, while nevertheless relying on the opinion of another clinician, Lisa Venkataraman, M.D., even though it also relied on no clinical findings. *Id.* at 23. For social security claims, like Gregory's, that are filed after March 27, 2017, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[]." 20 C.F.R. § 404.1520c(a). Rather, an ALJ must "articulate . . . how persuasive [he] find[s] all of the medical opinions," *id.* § 404.1520c(b), according to five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c). Supportability and consistency "are the most important factors," so federal regulations require an ALJ to "explain how [he]

considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). Supportability is defined as the "relevan[ce] [of] the objective medical evidence and supporting explanations presented by a medical source . . . to his or her medical opinion(s)." *Id.* § 404.1520c(c)(1). Consistency is the "consisten[cy] [of] a medical opinion[] . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

Gregory's argument is unfounded because it mischaracterizes the nature of the ALJ's rejection of Nwosu's conclusions. True, the ALJ noted that Nwosu "identified no specific clinical findings," but only after explaining that Nwosu's conclusions "appear[ed] inconsistent with the full range of motion of the knees noted in Ms. Nwosu's [own] records," A.R. at 34; *see, e.g.*, *id.* at 426, 429, 433—a ground Gregory does not mention. The ALJ also discredited Nwosu's account because she stated that Gregory had no mental limitation, despite evidence of substantial mental health treatment. *Id.* at 34. The ALJ adequately explained why Nwosu's opinion was outweighed by the other testimonial and medical evidence in the record, including Gregory's daily activities and Dr. Venkataraman's opinions, and thus called for limitations on Gregory's capacity, although short of what Nwosu recommended. Gregory also asserts that the ALJ concluded he could "only frequently . . . balance, stoop, kneel, [or] crouch" without providing any evidentiary basis, Mot. for J. of Reversal at 23 (quoting A.R. 30), and that the ALJ concluded without explanation that Gregory could only frequently reach with his left arm. That too is incorrect. The ALJ reviewed a range of evidence to support his determination that Gregory "remain[ed] able to perform a range of light exertional activity," including imaging studies and physical examinations. A.R. 32. And the ALJ qualified these remarks by recognizing that Gregory had "reduced range of motion of the shoulder and the knee, findings that support postural and manipulative limitations." *Id.* These

11

determinations both relied on a reasonable weighing of the record and are supported by substantial evidence.

Second, Gregory takes issue with the RFC's limitation to "simple, routine tasks," Mot. for J. of Reversal at 25 (quoting A.R. 31), without further accounting for Gregory's limitations in concentration, persistence, and pace. Citing authority that this RFC language "will not sufficiently capture a claimant's moderate limitations in concentration, persistence, or pace," *id.* at 25 (quoting *Davis*, 272 F. Supp. 3d at 172 ) (emphasis omitted), Gregory argues that the ALJ failed to sufficiently take these limitations into account in the RFC. It is true that in discussing whether Gregory met the criteria of Listings 12.04 and 12.06, the ALJ found that "in the light most favorable to the claimant . . . the claimant's psychiatric conditions cause more than 'mild' but less than 'marked' impairment in the claimant's ability to concentrate, persist, and maintain pace," and so the ALJ found a "moderate limitation" in this area. *Id.* at 29. But even assuming that this would make a "simple, routine tasks" instruction insufficient, that is not the only limitation the ALJ imposed. Rather, the ALJ included in the RFC that Gregory "is limited to applying commonsense understanding to carry out uninvolved written or oral instructions" and "dealing with problems involving few concrete variables in or from standardized situations," along with "normal work breaks" and a condition that the tasks not be "at a production pace." *Id.* at 30. The ALJ thus both considered Gregory's limitations with respect to concentration, persistence, and pace and integrated them into the RFC, and the Court is not, contrary to Gregory's suggestion, "left to guess how the ALJ" reached this conclusion. Mot for J. of Reversal at 26 (citation omitted).

Third, Gregory criticizes the ALJ for failing to explain the term "not at a production pace." *Id.* at 27. The Court, however, can readily discern the meaning of the term as work requiring an employee to keep a particular pace of production. *See Johnson v. Saul*, 19-cv-3929-RCL, 2021

WL 411202, at 6 n.5 (D.D.C. Feb. 5, 2021) (rejecting a contention that "this phrase is unclear" and noting that the ALJ phrased the same limitation as "no production rate for pace of work" at the hearing (alteration omitted)); *see also* A.R. 83–84 (hearing transcript reflecting similar discussion). There is no basis for remand.

### D.  Subjective Statements

Gregory next argues that the ALJ improperly discounted his subjective testimony when determining the severity of his symptoms with regard to his ability to walk, stand, and sit.  In particular, Gregory says that the ALJ rejected his statements "solely because the objective medical evidence [did] not substantiate the degree of impairment-related symptoms alleged by the individual," in violation of SSR 16-3p, 2016 WL 1119029, at *5. Mot. for J. of Reversal at 31. For this reason, Gregory says, the ALJ disregarded other evidence in the record and failed to logically explain his reasons for not fully accepting Gregory's account. *Id.* at 31–32.

This misconstrues the record.  The ALJ did not reach his findings about symptom severity, and reject Gregory's self-reports, solely on the basis of imaging results and physical examinations. The ALJ determined that Gregory's alleged symptoms were "not entirely consistent with the medical evidence *and other evidence in the record* for the reasons explained in this decision." A.R. 32 (emphasis added).  While the ALJ then focused on characterizing the "objective medical evidence," he also referred to Gregory's normal gait and only voluntary, occasional use of a cane. *Id.*; *see id.* at 27.  He further noted that Gregory's claimed "difficulty with personal care" due to physical limitations appeared inconsistent with Gregory's other testimony that "he can go out every day and that he travels on foot and on public transportation" and that "he regularly goes to medical appointments, goes to church, and visits family." *Id.* at 31.  He also noted Gregory's testimony that he instructs his nephews how "to perform electrical work, such as installing outlets,"

and "assist[s] his mother with groceries and carr[ying] her grocery bags." *Id.* at 32. When assessing the credibility of a claimant's statements about the severity of his symptoms, an ALJ may consider, among other factors, the claimant's daily activities. *Porter v. Colvin*, 951 F. Supp. 2d 125, 136 (D.D.C. 2013); 20 C.F.R. § 404.1529(c)(3). The ALJ clearly did not discount Gregory's testimony about the severity of his symptoms based on lack of objective evidence alone. He cited other evidence in the record, including Gregory's own account. Gregory complains that the ALJ gave too much weight to the evidence he relied on, and not enough to his treatment such as pain medications and physical therapy, but the Court may not "reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own." *Goodman*, 233 F. Supp. 3d at 104 (cleaned up).

### E. Reasoning Level

Finally, Gregory argues that the ALJ improperly determined that he could hold certain jobs that required a GED reasoning level 2, despite limiting Gregory to simple, routine tasks, which is consistent with reasoning level 1. The ALJ, however, adhered to the regulatory scheme in relying on a specific vocational preparation (SVP) level, rather than a GED reasoning level. *See* SSR 00-4p, 2000 WL 1898704. An SVP level of 2, which is what the ALJ assigned, is consistent with unskilled work. *Id.*; *see* A.R. 34. And there is no inherent conflict between reasoning level 2 jobs and a limitation to simple, routine tasks. *See Cox v. Saul*, 18-cv-2389, 2020 WL 9439356, at *19 (D.D.C. Sept. 1, 2020) (collecting cases), *report and recommendation adopted in full sub nom. Cox v. Kijakazi*, 2022 WL 178953 (D.D.C. Jan. 19, 2022).[4]

---

[4] Gregory also repeatedly suggests that the Commissioner has conceded several of Gregory's arguments by failing to address them in her brief, *see* Gregory's Reply Br. at 7, 8, 9, 10, 14, 17, 23, Dkt. 18, but the Commissioner clearly defended the adequacy of the ALJ's reasoning on each issue Gregory mentions—whether Gregory met the requirements of Listings 1.02, 12.04, and

**CONCLUSION**

For the foregoing reasons, the Court denies the Motion for Judgment of Reversal and grants the Motion for Judgment of Affirmance. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                                 */s/ Dabney L. Friedrich*
                                                                                                DABNEY L. FRIEDRICH
                                                                                                United States District Judge

October 12, 2022

---

12.06; the proper weight to give to Nwosu's and Dr. Venkataraman's testimony; and the RFC's incorporation of Gregory's concentration limitations.